Richard J Rinaldi, Esquire
**LAW OFFICES OF RICHARD J. RINALDI**
163 N. Main Street,
Old Forge, PA 18518
Ph: 570-780-6880

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD EMLAW, AND KEYSTONE DRUG & ALCOHOL, LLC,** | |
| **Plaintiffs,** | **CIVIL ACTION** |
| **v.** | **JURY TRIAL DEMANDED** |
| **WYOMING BOROUGH, WYOMING BOROUGH COUNCIL, CITY OF PITTSTON, CITY OF PITTSTON CODE ENFORCEMENT OFFICER, individually and in their official capacity, LAURA DENNIS, individually and in their official capacity, HAROLD SMITH, individually and in their official capacity, JOHN LIPSKI, individually and in their official capacity, ROBERT BORZELL, individually and in their official capacity, CHARLES BURNS, individually and in their official capacity, RUSSEL HERRON, individually and in their official capacity, MICHAEL BALOGA, AND individually and in their official capacity, JOSEPH SCALTZ,** | No. 3:24-cv-1706 |
| **Defendants.** | FILED SCRANTON OCT 07 2024 PER DJ DEPUTY CLERK |

## TABLE OF CONTENTS

COMPLAINT.................................................................................3

THE PARTIES ............................................................................3

JURISDICTION AND VENUE.................................................5

FACTUAL BACKGROUND ....................................................6

COUNT I—AMERICANS WITH DISABILITIES ACT of 1990 .......................26

COUNT II—42 U.S.C. § 1983, FOURTEENTH AMENDMENT ........................33

COUNT III – REHABILITATION ACT OF 1973..................................35

## COMPLAINT

NOW COME, the Plaintiffs, Ronald Emlaw and Keystone Drug & Alcohol, LLC ("Keystone") by and through their undersigned counsel, and respectfully submits this Complaint against the Wyoming Borough, Wyoming Borough Council, City of Pittston, City of Pittston Code Enforcement Officer, Laura Dennis, Esquire, Harold Smith, John Lipski, Robert Borzell, Charles Burns, Russel Herron, Michael Baloga, and Joseph Scaltz, and in support thereof, Plaintiffs aver the following:

## THE PARTIES

1.    The Plaintiff, Ronald Emlaw is an adult individual and the only member/shareholder of Plaintiff company Keystone Drug and Alcohol, LLC, a limited liability company of Pennsylvania with a mailing address of 341 Wyoming Avenue, Wyoming PA 18644.

2.    Defendant, Wyoming Borough ("Borough"), is a municipality organized under the laws of the Commonwealth of Pennsylvania, located at 277 Wyoming Ave., Wyoming PA 18644.[1]

3.    Defendant, Wyoming Borough Council ("Council"), is a subdivision

---

[1] All Defendant subdivisions of Wyoming Borough, including its representatives in their official capacity, share the Borough's central address which is: 277 Wyoming Ave., Wyoming PA, 18644.

of Wyoming Borough and the main legislative body within the Borough, with which Council shares the same address.

4.    Defendant, City of Pittston Code Enforcement Officer, is a subdivision of the City of Pittston and a third-party contractor for Wyoming Borough, located at 35 Broad Street, Pittston, PA 18640.

5.    Defendant Harold Smith ("Zoning Officer Smith" or "Mr. Smith") is an adult individual and the Pittston City Zoning Officer subcontracted for code enforcement by the Wyoming Borough, at all times relevant to this action, with his office located at 35 Broad Street, Pittston, PA 18640.

6.    Defendant Laura Dennis, Esquire ("Ms. Dennis" or "Solicitor Dennis") is an adult individual who served as the Solicitor of Wyoming Borough, at all times relevant to this action.

7.    Defendant John Lipski ("Mr. Lipski" or "Defendant Lipski") is an adult individual who served as a Wyoming Borough Councilmember, at all times relevant to this action.

8.    Defendant Robert Borzell ("Mr. Borzell" or "Defendant Borzell") is an adult individual who served as a Wyoming Borough Councilmember, at all times relevant to this action.

9.    Defendant Charles Burns ("Mr. Burns" or "Defendant Burns") is an adult individual who served as a Wyoming Borough Councilmember, at all times

relevant to this action.

**10.** Defendant Russel Herron ("Mr. Herron" or "Defendant Herron") is an adult individual who served as a Wyoming Borough Councilmember, at all times relevant to this action.

**11.** Defendant Michael Baloga ("Mr. Baloga" or "Defendant Baloga") is an adult individual who served as a Wyoming Borough Councilmember, at all times relevant to this action.

**12.** Defendant Joseph Scaltz ("Mr. Scaltz" or "Defendant Scaltz") is an adult individual who served as a Wyoming Borough Councilmember, at all times relevant to this action.

## JURISDICTION AND VENUE

**13.** This action is brought pursuant to 42 U.S.C. §§1983, 1985 and 1988, the United States Constitution, the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1391(b)(2) because it has subject matter jurisdiction over the claims set forth herein, and the amount in controversy is greater than $90,000.00.

**14.** Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391, because the alleged unlawful conduct within this Complaint, which forms the factual and legal basis of Plaintiff's claims, arose within the geographical

limits of the Middle District.

## **FACTUAL BACKGROUND**

15.    The business venture at the heart of this suit was never *just* about business. The idea for Keystone Drug and Alcohol was inspired by a sense of duty within Mr. Emlaw in response to the current drug epidemic plaguing Luzerne County. Plaintiff was driven to create a beacon of hope for the scores of regular good folks, whom *he personally knows all too well*, are disabled in mind and body, and broken in spirit. Firmly grounded in the very laws that were meant to protect against the type of reflexive, fear-based discrimination exhibited by the Defendants, Plaintiffs rely on such laws, knowing they are meaningless without this Honorable Court's authority to enforce them.

16.    In November 2021, Ronald Emlaw ("Mr. Emlaw"), CEO and sole member of Keystone Drug & Alcohol, LLC, ("Keystone"), an outpatient chemical dependency counseling facility, signed a five-year commercial lease on behalf of Keystone. The Lease was for a 3,000 square-foot office building with parking, located at 341-343 Wyoming Avenue (the "Property") in Wyoming Borough, Luzerne County, PA18644.

17.    Around April 2022, Keystone began to obtain drawings, surveys, drafted a Site Plan, a business plan, and hired part-time consultants to quicken Keystone's completion. Keystone had started the critically important state licensing

process in order to treat chemically dependent people.  To aid in that process, Mr. Emlaw employed Carmen Ambrosino, a highly sought after and well-respected addiction and regulatory consultant, with vast experience in establishing such facilities and treatment programs in accordance with the Pennsylvania Department of Drug & Alcohol Program's ("DDAP") regulatory requirements.

18.    An absolute prerequisite to moving forward toward DDAP licensure is securing a Certificate of Occupancy ("CO") from the local zoning authority.

19.    Thus, on or around April 29, 2022, Mr. Emlaw contacted Wyoming Borough seeking information about how to obtain the CO. Borough officials told Mr. Emlaw he had to go through the Luzerne County Zoning Office because Wyoming Borough had not handled zoning for some time; the Borough had no zoning officer, nor a zoning hearing board. Luzerne County handled all the Borough's zoning matters.

20.    Based on information and belief, significant to Plaintiffs' claims, is the shocking degree to which the Wyoming Borough, for several years, embraced a *laissez-faire* attitude toward zoning matters within its borders. It is believed the subcontracting out of its zoning and code enforcement occurred for at least a few

years leading up to 2022.[2]   During that entire period the Borough handled zero zoning matters. Significantly, there is nothing apparent during that time to suggest the Borough or its officers fought any decision approaching the degree to which they have fought the Plaintiffs; almost three years and two lost appeals later, and the Defendants are still fighting.

21.   On May 11, 2022, Mr. Emlaw, aided by his attorney and engineer, completed and submitted a Zoning Application to the Luzerne County Zoning Office.

22.   The Luzerne County Zoning Office initially denied Keystone's application because an "outpatient rehabilitation facility" is not a permitted use in the Community Business ("CB") district where the Property is located. Keystone, Mr. Emlaw and the Property's owner (Ghia, LLC) filed a Petition for Appeal requesting a "use variance" to operate as a rehabilitation facility.

23.   On June 7, 2022, the Luzerne County Zoning Hearing Board ("ZHB") held a public hearing, headed by four ZHB Board Members.

24.   Present with Mr. Emlaw was William Burke, his attorney; Carmen

---

[2] Regrettably, Plaintiff could not determine the exact number of years here; It can be ten or two. Plaintiffs' assertion is partly based on researching the minutes from every Council Meeting and published Resolution discoverable, going back almost three years. That research, together with word-of-mouth reports from residents and people familiar with such issues, form the basis of Plaintiffs' assertion on this matter.

Ambrosino, his consultant; Emmett Mancinelli, his civil engineer; and Alex Ciliberto, Keystone's Program Treatment Director.

**25.** Representatives of Wyoming Borough also attended in united opposition of the variance. Present were Borough Solicitor Laura Dennis, Mayor Joseph Dominick, and the Borough Council. (*In Re. Request of Ronald Emlaw*, Transcript of Proceedings (July 7, 2022) ("Transcript") attached as Exhibit "A") Keystone's counsel presented a detailed overview of the nature of the proposed use, the central premise being that Keystone "Drug & Alcohol" should be regarded as Keystone "Counseling Center" for zoning purposes because it would not house patients nor distribute medication. Keystone then fielded questions from the ZHB and the Borough.

**26.** Mr. Emlaw testified to being the sole member of Keystone LLC and that he had a five-year lease with three-year renewal options for the Property. He confirmed that the proposed use would be that of a counseling center; that there would be no inpatient housing, no medication dispensed, and three or four counselors per shift at the facility.

**27.** Mr. Mancinelli, Keystone's Engineer, explained the Site Plan he prepared for the Property. The Plan showed 26 parking spaces available for the proposed use, including parking spaces listed in Keystone's Lease and guaranteed by the Property owner on two immediately adjacent parcels also owned by him.

28.    Mr. Ambrosino then testified at length as to the DDAP state licensing process and Keystone's treatment program.  He also noted his extensive professional credentials and expertise in the field of addiction counseling: 41 years as CEO of Wyoming Valley Alcohol & Drug Services in Wilkes-Barre, Luzerne County, Pennsylvania and his various appointments to advisory positions by federal, state and local government. He detailed the proposed counseling program; the counselors' professional qualifications; the DDAP's intensive review process and stringent regulation of the program and facility; and the screening process for potential clients. He specifically testified that treatment facilities like Keystone are "professional counseling facilities." Finally, he testified as to the lack of any detrimental impact caused by such treatment centers in the neighborhoods where they are located, noting that in his 41 years as CEO of Wyoming Valley Alcohol & Drug Services, the police never once were called for a single incident.

29.    The ZHB Chairman then turned the meeting over to the Borough. Councilmember Joseph Scaltz asked for clarification regarding parking. Solicitor Dennis asked a similar line of questions about traffic and parking. Councilmember Lipski implied that the (clearly sufficient) available parking delineated in the Site Plan could not be "guaranteed," stating, "Well that's just a verbal agreement you have, right?" When informed by Attorney Burke that the parking outlined in the Site Plan was in fact guaranteed by Keystone's Lease, Mr. Lipski appeared discomforted,

tersely replying, "So [the Lease] can't be broken?" As if hearing himself made him regret the statement, he quickly admitted, "Okay I shouldn't ask it that way." (Transcript at 37-38)

30.    The Borough's performance was at times disjointed, meandering, or contradictory. However, through belief and the information presented herein, Plaintiff asserts that the Defendants' performance before the ZHB, like many of their actions, make perfect sense under the proper contextual light. That is, there actions are consistent with one who is using issues such as parking, traffic, or the classification of uses in the Ordinance, merely as pretexts to disguise their fear-driven animus towards the protected class, as highlighted below.

31.    Mr. Lipski suggested that Keystone was really a methadone clinic disguised in sheep's clothing, but he framed the allegation as a question about "treatment methods." Despite the professionalism and sincerity Keystone representatives exhibited in the Hearing, Defendant Lipski suggested a bait-and-switch was in the works.

> MR. LIPSKI: . . . From what I'm to understand, many rehab centers refer to themselves as drug and alcohol centers and treatment centers, or any other term while they get licensed. When they become licensed, aren't they -- don't they have carte blanche as to what their treatment is going to be? And having asked that question, what exactly is your treatment?

Transcript at 38-39.

32.    Mr. Ambrosino reiterated that Keystone would not house patients nor administer any medication like methadone, but rather would utilize individual and group therapy to heal patients' self-esteem, teach healthy communication skills, and address the underlying issues contributing to their dependency. Mr. Ambrosino concluded by assuring Mr. Lipski he need not fear this group; they are not dangerous. Mr. Ambrosino noted that in his 41 years treating chemical addiction in the field, not one time were police from any jurisdiction needed.

33.    When responding to Mr. Ambrosino's comments about police, Mr. Lipski's first words were "That wasn't my question at all."  (Transcript at 40) Yet tellingly, Mr. Lipski could not help but land a moment later on that precise subject:

> MR. LIPSKI: . . . Another question I would have -- and, again, you mentioned that there's been no issues with police, etc. I'm glad to hear that, very much so.  One of my other concerns would be: We are relatively close to the Wyoming library, which involves **a lot of youth**. Is there any issues, Mr. Ambrosino, that you have dealt with at all in the past

Transcript at 42.

34.    Mr. Lipski's question reveals how far off the mark the Borough is in giving the Plaintiffs equal treatment as a counseling center. If it were Keystone Wellness Counseling, or any label minus the "Drugs & Alcohol," would Mr. Lipski ask whether its patients pose a threat to children? Such a question oozes with false ideas and fear, the key ingredients in every form of discrimination. Such prejudicial fear invokes old, distorted images and dishonest stereotypes (the deranged wino

under the bridge, the crazed meth addict mumbling to himself in the street, and that long line of hopeless souls flanking Wyoming Avenue, filled with dangerously unpredictable deviants waiting for their next fix outside "**Keystone Methadone Clinic**," just steps away from the Library.)

35.    Following his question about the Library, Mr. Lipski perhaps let the truth slip out, when at the end of a nervous ramble he stated, "I'm just concerned about Wyoming Borough to be honest with you." (Transcript at 42). While Mr. Lipski's concern may have been genuine, it is misplaced and clearly implies that individuals seeking professional counseling for addiction recovery should be viewed as a threat to the safety and welfare of the Borough and its residents. That view reeks of stigma and negative stereotypes rather than facts. It is not only discriminatory toward a protected class under federal law, but it also lies at the heart of the dangerously unwarranted "knee-jerk" opposition to any mention of an "rehabilitation facility" coming to town.

36.    Again, Plaintiffs suggest he true acid test to determine whether such an inquiry is discriminatory, is to ask: If Keystone counseled overweight patients, or patients with PTSD, or smokers, or grieving widows, would Mr. Lipski be wondering if those patients pose a threat to children? Mr. Lipski stated, "I'm just concerned about Wyoming Borough." Would he have that concern if it was "Keystone Women's Resource Center?" Of course not, and thus at its core, Mr.

Lipski's fear is discriminatory, based on an archaic bogeyman notion about the dangerous nature of recovering addicts and alcoholics, who are a protected class under the ADA.

37.    Another particularly telling moment came from Solicitor Laura Dennis, who started out explaining why the proposed "change of use" would upset the expectations of the neighborhood's occupants:

> MS. DENNIS: . . . So on that block we have dog grooming;[3] we have a hair salon. Directly across the street, of course is the **children's** library. This is kind of an area between 8th and 9th street in Wyoming. Between 9th and 10th is an enormous **elementary school**. Behind it there are all the fields that **all kids use**, not just the elementary school. **Lacrosse** uses it; soccer fields use it. There's a lot of **foot traffic with a lot of kids**, and you know, people in that area.  But we're also on Wyoming Ave. where there's no parking. There's just no parking.

Transcript at 45-46 (emphasis added)

38.    Plaintiffs assert that the Borough never explained their rationale for being concerned about the "fields that all the kids play in" being so close, or the fact that "a lot of youths" walk right by Keystone's doors.  Plaintiff further suggests that

---

[3] The dog grooming business next door to the Plaintiffs' Property is mentioned repeatedly by several of the Defendants, throughout this over two-year ordeal. Even in the Borough's latest pleading before the Pennsylvania Commonwealth Court, the dog groomer is mentioned. What is not mentioned is Plaintiffs' belief that dog grooming is also not a permitted use in that CB district, and there was no evidence that business ever even applied for one. If there is no discrimination at play, where's the Defendant's' outrage about the dog groomer?

fixation on children being in close proximality to recovering addicts is nothing more than archaic, fear-based stereotyping of addicts being sexual deviants, thieves, rapists, or drug dealers. Such statements are consistent with textbook, disability-based discrimination on the part of the speaker.

39.    Keystone wanted to use the space like any counseling center would; there was nothing specific to patients recovering from chemical dependency, besides the community of clients and the focus of treatment, of which neither could be said to affect anything zoning-related. Mr. Emlaw testified as such before the ZHB, explaining that essentially if you alter the label, you will realize you never had a problem with our product. If you remove "Drug & Alcohol" from Keystone Drug & Alcohol, what remains is a counseling center.

40.    Keystone only ever asked for even-handed treatment, no more. It agreed to comply with parking requirements (and has), traffic requirements (and has), business requirements (and has) and so on down the line, just like any business occupying that particular building. Remove the "Drug & Alcohol" label, stated Mr. Emlaw, and you will see "Keystone" is really a generic counseling center. (Transcript at 39) The Defendants, however, have been utterly incapable of making that mental leap.

41.    Defendants appear to be clutching the old label to the object so tightly they cannot distinguish between the two. They are one in the same; a recovering

addict is a junkie, a thief and nothing but trouble. Just listen carefully to the Defendants' say it in their own words all throughout the ZHB Hearing.

**42.** The Plaintiffs' Attorney, Mr. Burke, then spoke to the fact that nowhere in the Borough is a drug and alcohol counseling center a permitted use, and in the HB districts, it was an excepted use. However, because the one HB district was little bigger than a house, Attorney Burke stated that a drug and alcohol counseling center had nowhere in the Borough to go, which would be discriminatory. **Mr. Lipski responded, "It doesn't have to be in the Borough then,"** which Plaintiffs suspected was the Defendants' desire all along; it is what they are still fighting for currently.

**43.** The Borough presented no evidence regarding alleged historical uses of the Property before Mr. Emlaw's tenancy, nor any evidence that the proposed use would have a negative impact on the surrounding neighborhood or the public welfare, safety or morality. The Borough did not even present evidence in regard to the parking situation.

**44.** The Luzerne County ZHB unanimously approved the Plaintiffs' proposed use, stating it was in line with any professional office. That decision was the death knell of the Borough's *laissez-faire* zoning policy. Borough Council sprung into action.

**45.** After that ruling, the Plaintiffs reengaged local officials to obtain the

CO, which was necessary to move forward with the state licensing application, not quite what the Defendants had in mind.

46.    Immediately following the ZHB's Ruling, the Borough did two things with breakneck speed, showing its firm resolve to fight the Plaintiffs all the way. First, Council voted to regain control over its zoning. A few years before, Wyoming Council voluntarily opted to relinquish its zoning power and responsibility to Luzerne County. Throughout that entire period, obviously no issue arose that was sufficient to incentivize the Councilmembers to take it back. That changed fast, once the Luzerne ZHB approved Keystone's proposed use for its property, located some fifty (50) yards from the Wyoming Borough Building.

47.    That is, a few weeks after Keystone Drug & Alcohol was cleared to operate its outpatient drug and alcohol treatment center, Wyoming Borough Councilmembers voted unanimously to immediately seize control over all zoning within its borders.

48.    Around that same time, on July 7, 2022, the Borough filed a Notice of Land Use Appeal, challenging Luzerne County's decision. Plaintiffs reasonably believe that is further evidence of the Defendants' bias-driven determination to be rid of Keystone and their clientele at any cost.

49.    Those two Borough actions were extremely illuminating for Mr. Emlaw, who became convinced the Defendants really did not want any former

substance abusers anywhere within its borders. To think that Councilmembers immediately embarked on that hefty task of assembling an entire zoning infrastructure from the ground up, going from zero to sixty in a few weeks, leads one to ask, why? What is this all about, parking that was shown to be more than sufficient? Plaintiffs submit there is no rational motivation to justify these drastic measures by any standard—without factoring in the actors' discriminatory motives.

50.     At least one source reported that, early on, Mr. Smith, the Pittston Zoning Officer at the time, engaged in overt discrimination, voicing animus toward Plaintiffs, due to their association with "them" being addicts and alcoholics. The source, close to Borough officials, reported that Mr. Smith advised Borough Council, openly warning them that they don't want "those people" around here.

51.     In December of 2022, Solicitor Dennis warned Mr. Emlaw that if he did not cease seeking his Certificate of Occupancy for the Keystone location, she would file a stay until the appeal was settled. Solicitor Dennis then implied that if the Borough lost that appeal, it would lay down its arms. Mr. Emlaw, already feeling beat up and bleeding money from extra engineering and site plan costs, delays for everything, and legal fees, he merely agreed without hesitation out respect, but followed through with not pursuing the CO until the Land Use Appeal was adjudicated, out of fear.

52.     On June 26, 2023, former President Judge Richard M. Hughes, III of

the Court of Common Pleas of Luzerne County ("Common pleas") issued an Order affirming the ZHB's Decision on the grounds that the proposed use should be classified as a professional office. Common pleas found that the ZHB neither abused its discretion nor committed an error of law.

53.    The Borough would then further delay the matter. After the Plaintiffs abided by Solicitor Dennis's wishes and in a show of good faith ceased seeking the CO until the Common Pleas Opinion was issued, the Borough did an about-face and appealed the Common Pleas decision to the Pennsylvania Commonwealth Court, even though Solicitor Dennis previously implied they would not.

54.    One cannot truly believe the driving force behind such drastic and drawn-out governmental efforts are due to the Defendants being highly concerned about Keystone's employees parking in a gravel lot. The Borough cannot reasonably be motivated to take such measurers because Council, without one study or shred of evidence, is worried ONLY about "foot traffic," as Solicitor Dennis suggested at the ZHB when she stated "[t]here's a lot of foot traffic **with a lot of kids,** and you know people  in that area." (Transcript at 46)

55.    Per the Wyoming Borough Ordinance, in a Community Business ("CB") district, where Keystone's building is located, there is no permitted use for

either a dog grooming shop[4] or a drug and alcohol outpatient treatment center. Immediately next door to Keystone is a dog grooming shop. Based on a search of Borough and County records, there was no variance granted, nor even one applied for. If there was no discrimination at play, why did the Borough not require the dog groomer to get a variance, when that business needs one no less than Mr. Emlaw, according to the ordinance?

**56.**    In the Borough's Brief to the Commonwealth Court, as well as in her quoted statement before the ZHB, Attorney Dennis twice mentions the dog groomer's shop. She also states that "its been there for years."

**57.**    Plaintiff asks how a dog groomer, who is known by all, is allowed to operate in a CB district without a variance for that unpermitted use? Based on information and belief, Council did not spend two years and three separate adjunctions dogging the groomer as Defendants have done to the Plaintiffs.

**58.**    Despite the Keystone facility being largely fit to receive the Building Permit and CO for some time, Mr. Smith's failure to respond meaningfully or timely to Mr. Emlaw's calls caused further delays.

---

[4] Plaintiff relies on research and a statement from the well-respected attorney who accompanied Mr. Emlaw before the Luzerne ZHB. (Transcript at 50) The Attonrey is speaking about the **Luzerne County Ordinance** in effect at that time. That Ordinance being in effect at all times relevant to this case, is the only Ordnance referred to throughout this Complaint.

59.    In and around early August 2023, Mr. Emlaw pressed Mr. Smith to issue the Building Permit the Plaintiffs were waiting for. Mr. Smith responded by telling him the Borough was appealing the most recent decision again this time, which had no bearing on the Building Permit or CO.

60.    Soon after in **that same month**, Solicitor Dennis emailed Mr. Emlaw, again threatening him with filing a "stay" unless he stopped moving forward with obtaining the CO.[5]

61.    However, Mr. Emlaw could not afford to accommodate Solicitor Dennis's wishes a second time. He desperately needed the CO so he could immediately focus on obtaining the DDAP license and launch Keystone before running out of money.

62.    Thus in and around early October 2023, Mr. Emlaw had his final building inspection and passed.

63.    Still without the Certificate of Occupancy (CO) he applied for some 18 months prior, Mr. Emlaw emailed Mr. Smith seeking the CO from the Zoning Enforcement Officer employed by Pittston and  subcontracted out provide zoning services for the Wyoming Borough.

---

[5] This behavior twice from a Borough Solicitor who is in active ligation against Mr. Emlaw, knowing the private citizen had legal representation, is problematic on numerous levels, to say the least.

64.     Mr. Smith responded quickly, stating he would not issue the CO until all the parking lots were paved, then he cited false testimony from the ZHB Hearing, which he did not attend, to support his fabricated, ad hoc requirement.

65.     Recall that Solicitor Dennis in her closing statement before the ZHB complained that **"there's nothing requiring [Mr. Emlaw] to pave the lots."** Stated otherwise, the requirement Ms. Dennis voiced to the ZHB, which was not imposed, was the exact same one Mr. Smith tried himself to impose upon Mr. Emlaw in order to grant him the CO.

66.     Plaintiff avers that a Pittston Zoning Enforcement Officer, either *knew* or *should have known* there never was any paving requirement. In light of everything else, Plaintiffs are certain it is the former. In light of all the other ad hoc obstructions by Defendants, this certainly appears to be a last-ditch effort to delay Plaintiffs' CO for as long as possible.[6]

67.     After Mr. Emlaw challenged Mr. Smith on the paving issue and reminded him that he was not even present at the ZHB Hearing,  Mr. Smith did not return Mr. Emlaw's calls or emails, or just refused to issue the CO. Contact would have to be made by Mr. Emlaw's attorneys weeks later.

---

[6] Defendant Smith's persistent refusal not only was another costly delay, but it also necessitated Mr. Emlaw's retaining  legal representation to obtain the OC that Plaintiffs deserved, having passed inspection.

**68.** In late October 2023, Plaintiff's attorneys finally forced Officer Smith to issue the CO, but Plaintiff would have obtained it at least a year earlier a year if Mr. Smith did not delay and obstruct the process. Even Solicitor Dennis recognized that fact on July 7, 2022, when before the Luzerne ZHB she questioned Mr. Emlaw about when he first approached Rosanne Collaruso the end of April 2022. Speaking of that time shows that Mr. Emlaw was close to completing the minor repairs needed to obtain thee CO, if not fully complete already:

> **BY MS. DENNIS:**
> **Q.**        So my questions is: You have not expended monies other than painting, but you are prepared to get an occupancy permit for the building ?
> [MR. EMLAW]
> **A.**        Yes. Yeah, we needed a permit in order to submit to DDAP, yea.

Transcript at 34 lines 20-25.

**69.** So not only was the CO held up by the Defendants for at least a year, even when he issued it, Mr. Smith decreased the occupancy load in contravention of Local Ordinance and without explanation. After more delays and legal fees, Mr. Smith marginally increased the occupancy load, yet still left it below the correct number, where it remains today.

**70.** When Mr. Emlaw called to correct it, Zoning Officer Smith was heard by two employees as saying, "Too bad, it's staying like it is. If you don't like it, call Labor and Industry." He hung up and never answered Mr. Emlaw's calls or emails

again.

71.    Unable to make contact, Plaintiff went to visit Mr. Smith's office at Pittston City Hall seeking an explanation. But Mr. Smith basically ignored his inquiry then walked away.

72.    Later that day, Wyoming Borough Solicitor, Laura Dennis, emailed Mr. Emlaw and said Mr. Smith accused him of "following him into work" and harassing him. Solicitor Dennis then warned Mr. Emlaw **not to approach any public official in either municipality again**, speaking with the authority convincing of a Pittston Solicitor.

73.    Plaintiff never understand how Mr. Smith could have felt harassed; or why no matter what he felt, why he call the Wyoming Borough Solicitor? It did not add up, obviously. Feeling "threatened," Mr. Smith called Solicitor Dennis for help, ***after the fact***, instead of immediately calling out to any number of Police Officers posted every 30 feet in City Hall.

74.    Plaintiff asserts that Mr. Smith appeared cocky and smug, and gave no indication of feeling threatened, *though perhaps* perturbed. Plaintiff believes the Pittston Zoning Officer called the Solicitor of Wyoming because Wyoming was in litigation against him, and he just invested **two (2) years** and **hundreds of thousands of dollars** into a business within the Borough's borders, while on the hook for a five-year lease. Borough officials had all the power in that dynamic, or

so it surely felt that way to Mr. Emlaw.

75.    It is believed Mr. Smith and Solicitor Dennis, two public officials, colluded to retaliate against, threaten , and silence a private citizen, all because of his pushback against their discriminatory disapproval of Keystone's prospective clients.

76.    Mr. Emlaw's attorney received no response when he asked Ms. Dennis if she intended to prohibit Mr. Emlaw from public forums. Yet one year later, neither Ms. Dennis nor Mr. Smith addressed either question, providing no reason for limiting Mr. Emlaw's occupancy load, nor any reason for limiting a handful of his constitutional rights either.

77.    The above events left Mr. Emlaw in financial ruin and Keystone's future in doubt. Today it barely limps along, struggling to establish a list of referring agencies, due to the pending litigation hanging over it for two years. The collective actions of the Defendants may ultimately win the day after all.

78.    Mr. Emlaw just wanted to help those who are suffering, while being treated like any oner professional office or counseling center. Near broke and gun-shy from the traumatic treatment he received, not wishing to call any attention to himself for fear of what might come next, Mr. Emlaw opted for a sign that bears no resemblance to the beacon of hope he planned "Keystone Drug & Alcohol" to be:



Keystone Drug & Alcohol, sign and storefront (Google Maps, 2024).

## COUNT I—AMERICANS WITH DISABILITIES ACT OF 1990
### PLAINTIFFS v. ALL DEFENDANTS

79.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if the same were set forth here in full.

80.    Within the Americans with Disabilities Act (ADA), Section 12132 constitutes the general prohibition against discrimination on the basis of disability by public entities:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

*See* 42 U.S.C. § 12132.

81.    To assure disabled persons are afforded equal benefits and services, the ADA requires public entities to make "reasonable modifications" stating:

A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 CFR 35.130(b)(7)(i).

82. All Defendants are qualifying " public entities" as defined by the ADA because the Defendants are either a "local government" or "department, agency, special purpose district, or other *instrumentally* of a . . . local government." 42 U.S.C. § 1213 l(l)(A)(B)(1999) (emphasis added).

83. Plaintiffs' patients and prospective patients in recovery are qualified "individuals with disabilities" as the term is defined, meaning people with drug addictions are entitled to protections offered by the ADA, especially in connection with their attempts to obtain drug rehabilitation services. 42 U.S.C. § 12210. *See also* Grace Land II, LLC v. Bristol Township, No. CV 18-5413, 2019 WL 4752026, at *5 (E.D. Pa. Sept. 30, 2019)

84. As a service provider who was subjected to legal action and whose use of property was and remains restricted due to its efforts to provide services to persons with substance abuse problems, Plaintiffs also entitled to legal protection under the ADA through their association.

85. Congress' stated broad goal in enacting the ADA was to provide "a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities." *See* 42 U.S.C. § 12101(b)(l).

86.    Zoning is an activity covered under Title II of the ADA.   In the preamble to the regulations implementing 42 U.S.C. § 12132, the Department of Justice notes that "Title II applies to anything a public entity does." *See* 28 C.F.R. p. 35, app. A at 438 (1998).

87.    Additionally, in the Technical Assistance Manual compiled to interpret the ADA and provide guidance to local governments, expressly uses zoning as an example of a public entity's obligation to avoid discrimination. U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, *ADA Update: A Primer for State and Local Governments*, pp.1,4 (2015).

88.    The policies, practices, and conduct of Defendants, as described above, violated Plaintiff's rights as secured by the ADA, in that said policies, practices, and conduct have operated so as to restrict and deny Plaintiff from lawfully using its property and from fulfilling its mission of providing individuals with disabilities the opportunity of benefitting from Plaintiff's treatment.

89.    Defendants improperly considered the disabilities of the  Plaintiffs' prospective and actual patients they treat or would have treated, in making zoning decisions and in continuing to fight the permitted land use that has already been approved.

90.    Defendants' policies and actions have a greater adverse impact on

persons with disabilities than on non-protected persons.

91.    By refusing to grant or accept the deemed approval of Plaintiff's proposed use , Defendants have disparately treated those individuals that Plaintiff sought to treat, and Defendant's disability-based, discriminatory acts caused actual financial harm to the Plaintiffs .

92.    Defendants not only failed to grant a "reasonable modification" as required by the ADA, **but they also acted to delay, restrict, and ultimately defeat the reasonable modification that was already granted by Luzerne County Zoning Hearing Board.**

93.    Furthermore, the Borough and its officers, after appealing the ZHB decision to Common Pleas and duping Mr. Emlaw into pausing his efforts to obtain his CO until that ruling was issued by implying the Borough would not go further— immediately after losing that appeal the Borough, with the aid of their Solicitor did exactly that, appealed that decision. **Such is galactically beyond the mere "failing to provide" a reasonable modification, which is all that is required for an ADA violation, even absent the discriminatory motive that is so apparent here.**

94.    Defendants' actions thus violated Title II of the ADA and such actions actually harmed and continue to harm Plaintiff and the persons with disabilities the Plaintiffs serve.

95.    Defendants completely ignored and failed to grant the request for

reasonable modification made by Plaintiff in seeking a use variance, then fought the approval of the Luzerne County ZHB until this present day, costing Mr. Emlaw not only in the lost profits and incurred expenditures without expected revenue from the delay, but also the epic legal and consultant fees.

96.    Those costs were exacerbated by the disability-based discrimination of Pittston Zoning Officer, Harold Smith, who while acting in his official capacity as an agent for the City, ignored, delayed and added ad hoc requirements to Plaintiffs' obtaining their desperately needed CO, only finally to issue it when threated with legal action by Plaintiffs' attorneys. That is, attorneys were needed to make Mr. Smith do anything; Plaintiffs would be surprised if he left his Pittston office chair to meet them, without a subpoena.

97.    Defendants violated Plaintiff's and their patients' and prospective patients' federally guaranteed rights under the ADA to be free from discrimination on the basis of disability or association with such, when Defendants failed to make reasonable modifications to their policies, zoning practices and procedures to ensure that their needs as individuals with disabilities would be met. Instead, Plaintiff has been subjected to the acts and omissions referred to herein above.

98.    Increasing the need for more treatment services even further within the Borough of Wyoming, is that not a single facility servicing drug addicts or alcoholics exists anywhere within the Borough. Nor has Plaintiff found any evidence

that one ever has.[7]  Considering the absolute need for such services, that stark fact without knowing more *would be* mind-boggling, if it was not so revealing of the Defendants' animus toward that protected class.

99.    Because of Defendants discriminatory reaction and behavior, Plaintiff have expended substantial time and financial resources and has lost the opportunity to conduct its business for almost two years, which also prevented a much-needed service in Luzerne County.

100.    As a direct and proximate cause of Defendants' disability-based acts and intentionally failing to act, Plaintiff suffered economic harm in the form of loss of profits from prospective clients, loss of good will, loss of business relations, referrals, and potential investors, as well as increased costs and expenses, both legal and otherwise.

101.    All discriminatory motives aside, instead of trying to stop Keystone by fighting and appealing rulings at every level, the ADA would almost certainly have mandated the Defendants to support the Plaintiffs' proposed land use as an advocate before the ZHB of Luzerne County.[8]  Moreover, the ADA's "reasonable

---

[7] The closest one is some 4-5 miles outside the Borough.

[8] Because the analysis under the ADA is not so straightforward and given the unorthodox handling of Wyoming's zoning it cannot be said with absolute certainty the ADA would have mandated the Defendants to support the Plaintiffs. But it almost certainly would have, given that every judicial body who adjudicated the matter granted Plaintiffs that very thing, approval of its proposed use.

modifications" mandate would have absolutely required the Defendants to at least **not oppose** the Plaintiffs' proposed use. Defendants' opposition was the direct and proximate cause of the Plaintiffs' colossal legal bills.

102.    Additionally, the Defendants continued fight also delayed Plaintiffs' CO, which in turn halted Plaintiffs in seeking their state license, causing more financial harm in lost profits.

103.    Defendants continued fight in the courts causes lost profits today, due to the business model of such faculties as Keystone. It is difficult to forge long-term business relationships to establish a stream of referrals, which is by far the main revenue stream for a treatment center such as Keystone. In that way the lingering uncertainty of pending litigation can be the death-knell for a facility so reliant upon referrals.


WHEREFORE, Plaintiffs Keystone Drug & Alcohol and Ronald Emlaw, respectfully request that this Court enter judgment against Defendants, and award Plaintiffs compensatory and punitive damages, attorneys' fees and costs, where applicable, and such other relief as provided by law that this Honorable Court deems just and proper.

## COUNT II—42 U.S.C. § 1983, FOURTEENTH AMENDMENT VIOLATIONS OF DUE PROCESS AND EQUAL PROTECTION CLAUSES

### *PLAINTIFFS v. BOROUGH OF WYOMING, CITY OF PITTSTON, LAURA DENNIS, HARRY SMITH and WYOMING BOROUGH COUNCIL*

**104.** Plaintiffs incorporate by reference the preceding paragraphs of this complaint as if the same were set forth here in full.

**105.** This claim is brought pursuant to 42 U.S.C. § 1983.

**106.** Defendants have acted under the color and authority of state law.

**107.** The denial and refusal to accept the deemed approval of Plaintiff's Application for a zoning variance to use a former office building as an outpatient counseling center is discriminatory on its face against persons with disabilities, a discrete and insular minority that faces restrictions and limitations and has been subjected to a history of purposeful unequal and unwarranted treatment.

**108.** Defendants' refusal to permit the establishment and operation of outpatient counseling center is arbitrary, based upon irrational prejudice against, and perceptions of, drug addicts and alcoholics and is not rationally related to any legitimate government interest. It therefore violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and has harmed and continues to harm Plaintiffs and the persons with disabilities

Plaintiffs serve.[9]

**109.**  The zoning ordinance, policies, practices, and conduct of Defendants, as described above, restricted Plaintiff's lawful use of its property as a treatment facility for individuals with disabilities and are evidence of Defendants' disparate treatment of Plaintiff because of its intended use of its property. Plaintiffs have been subjected to disability-based arbitrary, capricious, and irrational discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**110.**  Defendants' actions with the purpose of creating substantial obstacles to Plaintiffs and their ability to assist drug addicts and alcoholics, with its selective enforcement of zoning ordinances, shocks the conscience, and prevented a much-needed service.

WHEREFORE, Plaintiffs, Ronald Emlaw and Keystone Drug & Alcohol, LLC, respectfully request that this Court enter judgment against Defendants, and award Plaintiffs compensatory and punitive damages, attorneys' fees and costs, where applicable, and such other relief as provided under law, if this Honorable Court deems just and proper.

---

[9]  Recovering drug addicts are classified as being "disabled" for equal protection purposes. *See* U.S.C.A. Const. Amend. 14; Rehabilitation Act of 1973, 29 U.S.C.A. § 705(20)(C)(ii); Americans with Disabilities Act of 1990, § 104(a), 42 U.S.C.A. § 12114.

## COUNT III – REHABILITATION ACT OF 1973
### PLAINTIFF v. ALL DEFENDANTS

**111.** Plaintiffs incorporate by reference the preceding paragraphs of this complaint as if the same were set forth here in full.

**112.** Congress intended that individuals seeking to overcome their addictions would be protected by the Rehabilitation Act when seeking access to services, benefits, and employment provided by a federally funded program.

**113.** The Rehabilitation Act specifically recognizes as handicapped those individuals with drug-addiction who are "participating in a supervised rehabilitation program and [are] no longer engaging [in the illegal use of drugs]." See 29 U.S.C. § 706(8)(C)(ii)(II).

**114.** Section 504 of the Rehabilitation Act of 1973 prohibits any program or activity receiving federal financial assistance from discriminating against otherwise qualified people on the basis of their disabilities:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

*See* 29 U.S.C. § 794(a).

**115.** Because the Rehabilitation Act broadly defines "program or activity" to include "all of the operations of a local government receiving federal financial

assistance." *See* 29 U.S.C. § 794(b)(l)(A)(1999).

116. Zoning, a normal function of a government entity, is a covered activity within the meaning of the Act.

117. As a service provider who was subjected to legal action and whose use of its property is restricted due to its efforts to provide drug and alcohol inpatient treatment, Plaintiffs are entitled to legal protection under § 504.

118. Defendants' actions violate § 504 of the Rehabilitation Act and such actions harmed and continue to harm Plaintiff and the persons with disabilities Plaintiff serves.

119. Because of Defendants' discriminatory reaction and behavior, Plaintiff has expended substantial time and financial resources and has lost the opportunity to conduct its business and provide a much-needed service.

120. Discriminatory motivations aside, the mere fact that the Defendants sought to delay, restrict, and ultimately defeat the "reasonable modification" that was already granted by the Luzerne County Zoning Board, is clearly a violation of the "reasonable modification" requirement mandated by both the Rehabilitation Act and the ADA.

121. As a direct and proximate result of Defendants' improper and intentional actions, Plaintiff suffered economic harm in the form of potential loss of profits from prospective clients, loss of good will, and increased costs and expenses.

WHEREFORE, Plaintiffs Ronald Emlaw and Keystone Drug & Alcohol, LLC  respectfully request that this Court enter judgment against Defendants and award Plaintiffs compensatory and punitive damages, attorneys' fees and costs, where applicable, and such other relief provided by law, as this Honorable Court deems just and proper.

Respectfully Submitted,

Date:  10/7/2024            BY: _____

Richard J. Rinaldi, Esq.
**LAW OFFICES OF RICHARD J. RINALDI**
165 N. Main Street
Old Forge, PA 18518
Phone: (570) 780-6880
Email: Richard@RJRLaw.co

*Attorney for Plaintiffs, Ronald Emlaw and*
*Keystone Drug & Alcohol, LLC*