IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD EMLAW and KEYSTONE DRUG & ALCOHOL, LLC, | : | CIVIL ACTION NO. 3:24-CV-1706 |
| | : | |
| | : | (Judge Neary) |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| WYOMING BOROUGH, *et al.*, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Property is a fundamental right protected by the United States Constitution. But not every property dispute gives rise to a federal case. Even when there are concerns that a vulnerable population has been targeted and federal rights have been undermined, a party must allege sufficient facts under the law to state a plausible claim for relief.

Presently before the court are a motion (Doc. 29) to dismiss filed by defendant City of Pittston ("Pittston") and a partial motion (Doc. 30) to dismiss filed by defendants Wyoming Borough ("Wyoming"), Laura Dennis, Esquire, and Harold Smith as to plaintiffs Ronald Emlaw and Keystone Drug & Alcohol, LLC's ("Keystone") amended complaint. (Doc. 27). The amended complaint asserts claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et. seq.*, Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701, *et. seq.*, and the First and Fourteenth Amendments stemming from Emlaw and Keystone's attempt to build a substance abuse treatment center in the face of an

allegedly obstinate municipality. Reviewing the motions, the court will dismiss Pittston from this suit and significantly narrow the claims asserted against the remaining defendants.

## I.  Factual Background & Procedural History

Emlaw is a recovering alcoholic and drug addict who sought to assist others in his community with achieving and maintaining sobriety. (Doc. 27 ¶¶ 8-11). In November 2021, he signed a commercial lease for a 3,600 square foot office building (the "Property") and parking area located at 341-343 Wyoming Avenue, Wyoming in Luzerne County, Pennsylvania. (Id. ¶ 12). The lease was to begin in late 2021. (Id. ¶¶ 12-13; Doc. 27-1 at 2).

Emlaw's landlord agreed that a yet-to-be formed entity would operate a counseling center at the Property, and the parties executed a lease amendment on December 23, 2021. (Doc. 27 ¶16). Four days later, Emlaw formed "Keystone, LLC" of which he is the sole member, as "a proposed outpatient chemical dependence counseling facility". (Id. ¶ 17). To operate such a facility, Keystone needed to first obtain a Certificate of Occupancy from the local zoning authority and then receive a license from the Pennsylvania Department of Drug and Alcohol Programs ("DDAP"). (Id. ¶¶ 20-21).

Emlaw inquired with Wyoming local officials about obtaining the certificate and was told to contact the Luzerne County Zoning Office, which handled zoning matters for Wyoming. (Id. ¶ 22). On May 11, 2022, Keystone filed its zoning application. (Id. ¶ 24). Thereafter, the application was denied because the Property

2

was located in the "Community Business" district and an "outpatient rehabilitation facility" was not permitted in such a district. (Id. ¶ 25). Emlaw and his landlord filed a petition for appeal requesting a use variance. (Id.).

One June 7, 2022, the Luzerne County Zoning Hearing Board held a hearing on the petition for appeal. (Id. ¶ 26). At the hearing, members of Wyoming's council, its mayor, and its solicitor, defendant Dennis, were present to oppose the use variance, and some made statements that Emlaw interpreted as hostile to Keystone's mission of assisting recovering addicts. (Id. ¶¶ 28-45). These statements referenced the effects on traffic and parking, community safety, and whether Keystone would be a methadone clinic. (Id.) Emlaw, his engineer, and a consultant assisting him with the DDAP licensing process testified in support of the use variance. (Id. ¶¶ 27-31). Following the hearing, the Zoning Hearing Board approved the proposed use, finding that it was akin to a professional office. (Id. ¶ 46).

Having obtained the use variance, Emlaw attempted to get the occupancy certificate from Wyoming. Instead, Wyoming took back its authority over zoning decisions from Luzerne County for the first time in twelve years and filed a notice of land use appeal of the Zoning Hearing Board's decision in court. (Id. ¶¶ 48-52). Dennis threatened that if Emlaw did not cease seeking the certificate from Wyoming, she would file a stay until all appeals of the Zoning Hearing Board were finished. (Id. ¶ 52). Dennis implied that if Emlaw abandoned efforts to obtain an occupancy certificate, Wyoming would not request a stay and would not appeal the case further if it lost in the Court of Common Pleas. (Id. ¶ 52). Emlaw complied

3

because he could not afford to pause construction until after the final appeal. (Id. ¶ 53). The Court of Common Pleas affirmed the Zoning Hearing Board's decision on June 26, 2023, but Wyoming appealed to the Commonwealth Court despite prior assurances that it would not appeal. (Id. ¶¶ 54, 55). The Commonwealth Court affirmed the lower court's decision and upheld Keystone's use variance.[1]

Having received the use variance, Emlaw attempted to get a building permit and the occupancy certificate once again from Smith, who was Pittston's zoning officer, but who also provided code enforcement to Wyoming. (Id. ¶¶ 4, 60). Emlaw and his engineer completed all the steps necessary to obtain a building permit, and on August 17, 2023, the Property passed a third-party inspection. (Id. ¶¶ 65, 68). Smith still stated that he would not issue the occupancy certificate unless Keystone paved its parking lots. (Id. ¶¶ 70).  However, the Zoning Hearing Board did not require Keystone to pave the parking lot. (Id. ¶¶ 70-73). Both Dennis and Smith insisted that the Zoning Hearing Board only approved the use if the parking spots were paved. (Id. ¶ 74).

Emlaw's attorney demanded the occupancy certificate from Smith, giving him until September 5, 2023, to do so. (Id. ¶ 82). Smith eventually issued the certificate, but set the Property's occupancy load at fourteen, which was 64% lower than Wyoming ordinance allowed. (Id. ¶ 85). That number was later increased to

---

[1] Wyoming's brief (Doc. 38) notes that the appeal remains pending; however, publicly available records indicate the Commonwealth Court issued a decision on October 30, 2025, affirming the Court of Common Pleas' decision. See Wyo. Borough v. Zoning Hearing Bd. of Luzerne Cnty., No. 822 C.D. 2023, 2025 WL 3033889 (Pa. Commw. Ct. Oct. 30, 2025).

seventeen, which is still 44% lower than allowed and requested. (Id.). Emlaw subsequently went to Pittston City Hall to inquire with Smith about the occupancy load, but was ignored. (Id. ¶ 87). Dennis then emailed Emlaw and accused him of threatening Smith and told him not to speak with Smith again. (Id. ¶ 88).

Emlaw and Keystone initiated this action by filing a complaint on October 7, 2024. (Doc. 1). Following motions (Docs. 16, 17) to dismiss, they filed the operative amended complaint on February 18, 2025. The amended complaint contains four counts: Title II of the ADA against Pittston and Wyoming (Count I); a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Dennis and Smith (Count II); a Fourteenth Amendment due process and equal protection pursuant to Section 1983 against Wyoming, Dennis, and Smith (Count III); and Section 504 of the RA against Pittston and Wyoming (Count IV). Pittston, Wyoming, Dennis, and Smith again filed motions to dismiss. (Docs. 29, 30). The motions are fully briefed (Docs. 31, 34, 35, 38, 42, 47) and ripe for disposition.

## II.   **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker

v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).[2]

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 231 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is

---

[2] The complaint (Doc. 1) attached two exhibits, a hearing transcript (Doc. 1-2) and a notice of land use appeal (Doc. 1-3). The amended complaint did not attach these exhibits, though it continued to reference them. Accordingly, the court will consider these documents.

facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

### III.  Discussion

Defendants raise several defenses in opposition to plaintiffs' claims. Pittston argues that it cannot be liable under the ADA or RA only because Smith, its zoning officer, also handled the zoning for Wyoming. Wyoming argues that Emlaw lacks standing to bring suit under the ADA and RA. Smith and Dennis argue that Dennis is not a state actor for purposes of First Amendment retaliation, equal protection, or substantive due process and Smith lacks personal involvement in any alleged retaliatory decisions.

#### A. ADA and RA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Together, the statutes "constitute[] a general prohibition against discrimination by public entities,

regardless of activity." <u>New Directions Treatment Servs. v. City of Reading</u>, 490 F.3d 293, 301 (3d Cir. 2007).

The ADA and RA claims are considered together because "the substantive standards for determining liability are the same." <u>Furgess v. Pa. Dep't of Corr.</u>, 933 F.3d 285, 288 (3d Cir. 2019) (quoting <u>McDonald v. Com. of Pa., Dep't of Pub. Welfare Polk Ctr.</u>, 62 F.3d 92, 95 (3d Cir. 1995)). To state a claim a party must allege they are "a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." <u>Furgess</u>, 933 F.3d at 288-89 (citing <u>Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.</u>, 587 F.3d 176, 189 n.19 (3d Cir. 2009)). To be entitled to compensatory damages, a party must allege that the discrimination was intentional under a deliberate indifference standard. <u>Durham v. Kelley</u>, 82 F.4th 217, 225 (3d Cir. 2023).

Pittston and Wyoming mount attacks on these claims from separate flanks. Pittston argues it is the wrong defendant to bring these claims against because it is not the public entity providing services. Wyoming instead argues that Emlaw lacks standing to bring the ADA claim because it had no knowledge that he was a qualified person with a disability, and he does not have associational standing with Keystone. Last, Wyoming asserts a threadbare argument concerning plaintiffs' allegations about Wyoming's receipt of federal funding under the RA.

### 1. Public Entity

The ADA defines a public entity as "any State or local government" and "any

department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). The RA defines "program or activity" to mean "all of theoperations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). Based on these definitions, both the ADA and RA plainly apply to a local government like Pittston.

The basis for these claims against Pittston is that Smith is "employed by Pittston City as its Zoning Officer who also provided code enforcement services to the Wyoming Borough," (Doc. 27 ¶ 4). Emlaw and Keystone's counsel further wrote to Smith "in [his] capacity as Building Code Official / Code Enforcement Officer for Wyoming Borough," (Doc. 27-1 at ECF 81). Dennis, Wyoming's solicitor, noted that while "Smith is not an employee of Wyoming Borough, he certainly is an agent in his capacity as our Zoning Officer." (Id. at ECF 33, 55). In a separate section of the amended complaint, plaintiffs refer to Smith as an "instrumentality" of local government. (Doc. 27 ¶ 132).

Pittston argues that it cannot be liable under the ADA or RA because, though Smith is its employee, plaintiffs were not "subjected to discrimination by any such entity." 42 U.S.C. § 12132. In other words, Wyoming, not Pittston, is the entity whose "services, programs, or activities," or other general actions are allegedly discriminatory to Emlaw and Keystone.

Pittston is correct. To be liable under the ADA or RA, a plaintiff must allege, in a nonconclusory fashion, that the defendant is the party denying them the

9

benefit of the program, service, or activity. Here, Smith is employed by Pittston, but the allegations are that he is a subcontractor doing code enforcement and zoning for *Wyoming*. Accordingly, the public entity responsible for the program, service, or activity is Wyoming.

In opposition, plaintiffs cite to Bircoll v. Miami-Dade County, an Eleventh Circuit case, for the proposition that Section 12132 of the ADA's catchall clause is a "catch-all phrase that prohibits all discrimination by a public entity, regardless of the context." 480 F.3d 1072, 1084 (11th Cir. 2007). The catchall clause is meant to apply the ADA's reach to "encompass virtually everything that a public entity does." Haberle v. Troxell, 885 F.3d 171, 180 (3d Cir. 2018) (cleaned up). That is, the ADA will apply even when a government activity is not thought of as a traditional service, program or activity. For example, the Third Circuit has stated that the ADA "can indeed apply to police conduct during an arrest." Id. at 180. If anything, this proposition goes to the expansiveness of the *activities* subject to the ADA's reach, not to *parties* subject to the ADA.

Plaintiffs also cite to the Code of Federal Regulations for the proposition that "[a]ll government activities of public entities are covered, even if they are carried out by [private] contractors." 28 C.F.R. part 35, app A at 558 (2009). The regulation cited by plaintiffs merely stands for the proposition that a facility, such as a prison or jail, is still subject to Title II even if built or run by a private entity via contract. Id.

Neither of these citations supports the proposition that Pittston bears liability for Smith's actions while serving as Wyoming's zoning officer and making allegedly discriminatory decisions about the Property located in that municipality. Smith was indeed an instrumentality of local government, but the public entity Smith was working for within the allegations of the amended complaint was Wyoming. That Smith was also an employee of Pittston at that time does not create liability for Pittston. A municipality can be liable for the allegations against Smith, but that municipality is only Wyoming. Accordingly, Pittston's motion to dismiss with prejudice will be granted.

### 2. Standing

To establish Article III standing, a plaintiff must establish an (1) injury-in fact; (2) that is concrete and particularized; and (3) is fairly traceable to the challenged action of the defendant. Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc. 528 U.S. 167, 180-81 (2000)). To state a claim under the ADA, a party must allege they are "a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." Furgess, 933 F.3d at 288-89 (citing Chambers, 587 F.3d at 189). For compensatory damages, a plaintiff must allege "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." Durham, 82 F.4th at 226 (quoting Haberle, 885 F.3d at 181).

11

In addition to direct standing, under Title II of the ADA, a plaintiff can have associational standing. S.K. v. N. Allegheny Sch. Dist., 146 F. Supp. 3d 700, 711 (W.D. Pa. 2015). "It is widely accepted that under both the RA and ADA, non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person." McCullum v. Orlando Regional Health-Care Sys., Inc., 768 F.3d 1135, 1142 (11th Cir. 2014) (citing Addiction Specialists, Inc. v. The Twp. of Hampton, 411 F.3d 399 (3d Cir. 2005)).

To assert associational standing, a plaintiff must allege "(1) a logical and significant association with an individual with disabilities; (2) that a public entity knew of that association; (3) that the public entity discriminated against them because of that association; and (4) they suffered a direct injury as a result of the discrimination." S.K., 146 F. Supp. 3d at 712 (quoting Schneider v. Cnty. of Will, 190 F. Supp.2d 1082, 1091 (N.D. Ill. 2002)).

Wyoming argues that Emlaw lacks both direct and associational standing under the ADA. It argues he lacks direct standing because while he is a recovering addict, that disability was not known to Wyoming. As for associational standing, Keystone is not an individual with a disability, and Emlaw therefore cannot latch onto it for that purpose.

As for direct standing, Emlaw has not adequately alleged that Wyoming knew he was a qualified individual with a disability at the time of the alleged adverse actions. While the amended complaint is replete with allegations about recovery and how personal Keystone's goals were to Emlaw, nowhere does it aver

12

that Wyoming's officials knew about his recovery. Emlaw alleges vaguely that "[a]ll through that time [his ten years of sobriety] he held himself out as being in recovery, mentioning the fact to the Defendant officials, and even speaking [to] reporters while trying to establish Keystone Drug & Alcohol." (Doc. 27 ¶ 101). But the local news report that Emlaw cites to is from January 17, 2024,[3] which was after many of the alleged adverse actions, including the appeal of the Zoning Board Hearing's decision. (Id. ¶ 10). He does not, for instance, allege that his testimony at the June 7, 2022, Zoning Board Hearing concerned his own sobriety, instead testifying about his relationship to the business and its operation. (Id. ¶ 29). To sustain direct standing in the ADA context, Emlaw must show the defendants knew of his disability *before* they took the allegedly discriminatory action. The general allegation that he mentioned his conditions at some point throughout the course of ten years is insufficient.

Emlaw fares no better on associational standing. Wyoming does not challenge that Keystone has third party standing to bring a suit under the ADA. Probably because Third Circuit precedent, along with federal regulations, establish that an entity may sue on behalf of its injured members under the ADA. Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005); 28 C.F.R. §

---

[3] The complaint dates the video as from January 17, 2023. (Doc. 27 ¶ 10). The defendants are correct, however, that the video was actually posted on January 17, 2024. See https://www.tiktok.com/@fox56wolftv/video/7325123769767398687; see also, Alyshia Hercules, New outpatient center in Wyoming offers hope for drug and alcohol recovery, FOX 53 WOLF (Jan. 14, 2024), https://fox56.com/news/local/new-outpatient-center-in-wyoming-offers-hope-for-drug-and-alcohol-recovery [https://perma.cc/E8KB-EAXQ] (the original news story from the TikTok video).

35.130(g). That includes, implicitly, prospective patients who would be qualified individuals under the ADA. RHJ Med. Ctr. v. City of Dubois, 754 F. Supp. 2d 723, 737-38 (W.D. Pa. 2010). The question is whether Emlaw can have associational standing with Keystone, which itself has third party standing. The answer is no. Keystone is not an individual with a disability, and while Emlaw does have a logical and significant relationship to it, he cannot use it to bootstrap himself to this ADA claim.

Emlaw appears to try to get around this conclusion by asserting he, as the owner of Keystone, has a relationship with its future clients. (See Doc. 42 at 4-5). By doing so, he transforms the basis of his argument from one relying on associational standing with one relying on third-party standing. Compare Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc., 280 F.3d 278, 287-89 (3d Cir. 2002) (discussing third-party standing) with Free Speech Coal., Inc. v. Att'y Gen. United States, 974 F.3d 408, 420-21 (3d Cir. 2020) (discussing associational standing). To successfully invoke third-party standing, a plaintiff must show, *inter alia*, that he has suffered an injury and a close relationship with himself and the third party who would ordinarily be expected to sue. Pa. Psychiatric Soc., 280 F.3d at 288 (citations omitted). As discussed above, Emlaw has not suffered an injury since he cannot show defendants knew of his disability. Moreover, he cannot assert a "close relationship" with prospective future patients who may not even exist. Accordingly, Emlaw lacks standing—direct, associational, third-party, or otherwise—to bring an ADA claim.

### 3. Receipt of Federal Funds and Damages

Wyoming alleges that plaintiffs have not plausibly alleged it received federal funds to bring a Section 504 RA claim. It further argues that punitive damages are unavailable under the RA. The RA only applies when a program or activity receives federal financial assistance. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 n.20 (3d Cir. 2009) (citing 29 U.S.C. § 794(a)). Wyoming argues that plaintiffs' allegations that "at all times relevant, Defendant[] Wyoming Borough . . . received federal funding," (Doc. 27 ¶ 170), is insufficient to establish this element of an RA claim.

At this point in the litigation, plaintiffs' allegation is sufficient. In Montanez v. Price, the Third Circuit found a similar allegation was enough to sustain a Section 504 claim at the motion to dismiss stage. 154 F.4th 127, 145-46 (3d. Cir. 2025). The complaint in that case was filed *pro se* and so "liberally construed," but the court still noted while discovery could establish otherwise, at the motion to dismiss stage, this was an allegation to be taken as true. Id. With that said, punitive damages are unavailable against a municipality under the RA. Doe v. County of Ctr., 242 F.3d 437, 458 (3d Cir. 2001). Accordingly, the RA claim against Wyoming may proceed, but punitive damages are not available.

Turning now to compensatory damages, a plaintiff must show a municipality acted with "deliberate indifference" in order to get them. Haberle, 885 F.3d at 181. This standard is the same as the "deliberate indifference" standard in Section 1983 suits. Id. (citing S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263

15

n.23 (3d Cir. 2013)). Plaintiffs seek to establish deliberate indifference on a failure to train theory based on the actions giving rise to this case. (Doc. 42 at 8-9). In other words, they are proceeding under a single-incident failure to train theory. Under this theory, "the identified deficiency in [the] training program must be closely related to the ultimate [ ] injury." Thomas v. Cumberland Cnty., 749 F.3d 217, 226 (3d Cir. 2014) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1028 (3d Cir. 1991)). Further, liability does not attach where the object of the training would be "self-evident" because in these instances, the failure to train cannot be said to amount to deliberate indifference. Kobrick v. Stevens, 763 F. App'x 216, 221 (3d Cir. 2019) (nonprecedential). Both of these requirements reinforce the idea "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989).

Here, the amended complaint does not adequately allege deliberate indifference. Plaintiffs argue because Wyoming officials attempted to impose an erroneous paving requirement, set an artificially low occupancy limit, and refused to engage with him show there was a need for more ADA-related training. (Doc. 42 at 10-11). First, there is no causal connection between these alleged harms and an ADA violation. Emlaw's contention is effectively that Wyoming Borough weaponized the zoning code against him. However, the ADA's requirements are completely separate from the technical aspects of Wyoming's zoning code. It is not at all

16

obvious that officials will use zoning and code enforcement in an attempt to undermine the ADA. Moreover, Emlaw's complaint in this aspect amounts to Wyoming imposing arbitrary requirements rather than follow its own zoning code. But government officials are expected to follow the laws and ordinances that bind them. That may not have happened in this case, but that also does not establish a need for training on this specific issue. Because there was no deliberate indifference alleged in the operative complaint, compensatory damages cannot be awarded for the RA claims. Though, plaintiffs will be granted leave to amend to include any other allegations establishing deliberate indifference for compensatory damages.

### B.  First Amendment Retaliation

Plaintiffs allege that Dennis and Smith retaliated against them in violation of their First Amendment rights. For her part, Dennis argues that she is not a state actor and thus cannot be held liable for alleged First Amendment violations under Section 1983. As for Smith, he argues that he had no role in appealing the Zoning Hearing Board's decision on which the retaliation claim is predicated.

To establish a Section 1983 claim, a plaintiff must show "a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). To establish a First Amendment retaliation claim, a plaintiff must prove that "(1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary

firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'" Palardy v. Twp. of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)).

"A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) (cleaned up). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." Id. This applies to attorneys representing municipal clients. El-Bey v. Allentown Police Dep't, No. CV 23-652, 2023 WL 3594145, at *7 (E.D. Pa. May 22, 2023). When, however, a municipality's attorney "goes beyond the traditional attorney-client relationship, she may become a state actor." Belkowski v. Kruczek, No. 2:09-CV-1549, 2010 WL 1433099, at *3 (W.D. Pa. Apr. 7, 2010) (citing Frompovicz v. Twp. of S. Manheim, No. 3:6-CV-2120, 2007 WL 2908292, at *8 (M.D. Pa. Oct. 4, 2007)). In other words, when an attorney begins exercising policy making authority, that can transform the lawyer into a state actor. El-Bey, 2023 WL 3594145, at *7 (citations omitted).

### 1. Solicitor Dennis

Nothing alleged in the amended complaint establishes Dennis acted outside the role of an attorney. First, a majority of the allegations in the amended complaint deal with Dennis telling Emlaw she will seek to file stays or appeals in

18

legal proceedings. (See, e.g., Doc. 27 ¶¶ 52, 55, 62-66). These are quintessentially legal functions, and Dennis was well within the scope of acting as a typical lawyer in taking these actions. Plaintiffs seem to argue that because the Wyoming municipality was trying to act against them, any action Dennis took on behalf of her client can be imputed to her. Not so. As an attorney, Dennis is expected to carry out the will of her client within the scope of normal legal proceedings and that is precisely what she did. Beyond that, Plaintiffs allege Dennis' comments at a public hearing transform her into a state actor. (Doc. 42 at 13). They are wrong. A lawyer rendering advice to a client does not become a state actor. El-Bey, 2023 WL 3594145, at *7. Though Plaintiffs may not like the points she was raising at the hearing, Dennis is allowed to bring concerns to her client. Nothing in the amended complaint shows Dennis has any authority on the ultimate policy preferred by Wyoming; she merely was carrying out her client's wishes. Thus, she is not a state actor and the claims against her must be dismissed.[4]

### 2. Code Enforcement Officer Smith

Smith seeks to dismiss the retaliation claims in Count II of the amended complaint to the extent such claims were predicated on filing a land-use appeal and filing a *supersedeas*. (Doc. 38 at 20). In response, Plaintiffs argue various factors show he plausibly pleaded a First Amendment retaliation claim against Smith. (Doc. 42 at 15-15). Yet, none of the allegations relied on by Plaintiffs deal with the

---

[4] This includes the claims against Dennis in Count III of the amended complaint.

decision to file an appeal or *supersedeas*. Smith does not argue he should be entirely dismissed from Count II, only to the extent that he was not involved with these specific decisions. As the amended complaint contains no allegations to the contrary, claims for retaliation against Smith will be dismissed in Count II to the extent they rely on the decision to file an appeal or a *supersedeas*.

### C. Fourteenth Amendment Claims

The final issues before the court concern Plaintiffs' claims arising from alleged violations of the Fourteenth Amendment made actionable by 42 U.S.C. § 1983. Specifically, Plaintiffs allege violations of substantive due process and equal protection.

### 1. Substantive Due Process

First, Plaintiffs allege a fundamental property interest in the subject property. (Doc. 27 ¶ 153). They argue the actions of Dennis and Smith deprived them of their rights to the property. (Id. ¶ 158). "[W]hether a zoning official's actions or inactions violate due process is determined by utilizing a 'shocks the conscience' test." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) (quoting United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA, 316 F.3d 392, 399 (3d Cir. 2003)). This is a high bar. For example, a locality acting in bad faith or otherwise having an improper motive does not shock the conscience. United Artists, 316 F.3d at 400-02. Examples of conscience-shocking behavior are corruption, self-

dealing, hampering a constitutionally protected activity, or "bias against an ethnic group." Eichenlaub, 385 F.3d at 286.

None of those examples are present here. Plaintiffs appear to argue Wyoming's allegedly discrimination against drug-users, and that this alleged discrimination is sufficient to find a constitutional violation. (Doc. 42 at 23). On the contrary, giving treatment to drug users is not a constitutionally protected activity nor are drug users a suspect class under the Constitution. This current dispute is a prime example "of the kind of disagreement that is frequent in planning disputes" and not something rising to level of constitutional violation. Eichenlaub, 385 F.3d at 286. The amended complaint therefore fails to allege a substantive due process claim.

### 2. Equal Protection

Next, the amended complaint also contains allegations of selective enforcement under the Equal Protections Clause. (Doc. 27 ¶¶ 151-52, 154,159). In order to prevail on a selective enforcement claim, a party must show "(1) that it was treated differently from other similarly situated entities, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." PG Pub. Co. v. Aichele, 705 F.3d 91, 115 (3d Cir. 2013) (cleaned up).

Here, the complaint fails to allege there was different treatment among similarly situated entities. It does mention that in a ten-year span, out of over 62 variances sought, this was the only time Wyoming borough intervened. (Doc. 27 ¶

154). But it does not mention what any of those other variances were or who was seeking them. Were they homeowners asking to be exempted from a new rule, or businesses seeking to offer longer hours? Without more detail, the court cannot conclude these other properties were similarly situated to Keystone. As for any other requirements imposed, such as parking lot conditions, the complaint fails to allege there were other similarly situated entities who did not have to comply with similar requests. They would need to allege other similar businesses, with parking lots in a similar condition, were not asked to do any work on the pavement of their parking lots.

Finally, because the amended complaint fails to state any underlying constitutional violation claims, there cannot be any Monell liability against Wyoming itself. Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). The entirety of Count III will be dismissed without prejudice.

## IV.    Conclusion

Given the liberal standard of allowing amendments to a complaint, and this being plaintiffs' first amended complaint, the court will only dismiss with prejudice the claims where allowing any amendment would be futile. Plaintiffs concede punitive damages are not available against Wyoming under the RA or Section 1983; so those requests are dismissed with prejudice. Plaintiffs also offer no argument as to the liability of Code Officer Smith with regards to the decision to file a land use

22

appeal or a *supersedeas*. Further, it is clear Pittston is not a proper defendant in this case, as their only connection is Code Officer Smith. Smith shall remain a part of this suit and, to the extent he did work for Wyoming, Plaintiffs may proceed against that municipality. Pittston, however, is just not involved with the claims here. Otherwise, all other dismissals shall be without prejudice and an appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    April 15th, 2026